ORDERED.

Dated: May 26, 2021

*Catherine M. Ewen*
Catherine Peek McEwen
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION
www.flmb.uscourts.gov

In re:

WORK CAT FLORIDA, LLC f/k/a
WORK CAT TRANS GULF, LLC,

    Debtor.
_____/

Case No.: 8:21-bk-02588-CPM

Chapter 11

**INTERIM ORDER GRANTING DEBTOR'S EMERGENCY
MOTION FOR AUTHORITY TO USE CASH COLLATERAL,
AND REQUEST FOR EMERGENCY PRELIMINARY HEARING**

**THIS MATTER** came before the Court for hearing on May 21, 2021 at 2:00 P.M. (the "Hearing") upon the *Debtor's Emergency Motion for Authority to Use Cash Collateral, and Request for Emergency Preliminary Hearing* [ECF No. 2] (the "Motion").[1] The Court, having reviewed the Motion, having heard argument of counsel to the parties, finds and determines that: (a) the Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334; (b) venue is proper before this Court pursuant to 28 U.S.C. § 1408; (c) this matter is core pursuant to 28 U.S.C. § 157(b)(2); (d) notice of the Motion and the Hearing was sufficient under the circumstances; and (e) just cause exists to grant the relief requested in the Motion on an interim

---

[1] All capitalized terms used herein and not otherwise defined shall have the meanings set forth in the Motion.

basis as being in the best interest of the Debtor, the creditors and all parties in interest. Accordingly, it is:

**ORDERED** as follows**:**

1. The Motion is **GRANTED** as set forth herein.

2. The Debtor is authorized, from the Petition Date through and including June 17, 2021 (the "Interim Period"), to use the Cash Collateral of the Creditors, (a) Vetting, LLC and (b) NowAccount Network Corporation, and to pay the expenses and costs of administration incurred by the Debtor as set forth in and in accordance with the Budget attached hereto as **Exhibit A** (the "Budget").

3. The Debtor shall be allowed a variance in respect of any line item(s) set forth in the Budget to enable the Debtor to make payments in excess of any such line item(s) during a particular period in the Budget, provided that the such excess payments in the aggregate shall not exceed ten percent (10%) of the total budgeted expenses for the same period in the Budget (collectively, the "Allowed Variance").  In the event that an expense arises which is not within any of the approved line items in the Budget, or the Debtor anticipates that any line item will need to be exceeded by more than the Allowed Variance, then the Debtor shall request approval from the Creditors in writing, and the Creditors shall have five (5) business days from the date of such request within which to provide consent or object. In the event that the Creditors do not consent, then the Debtor shall file a motion with the Court seeking amendment of the Budget and approval of the additional expense, which relief may be sought on an emergency basis.

4. As and for adequate protection for the Debtor's use of Cash Collateral, the Creditors are hereby granted, effective as of the Petition Date, a replacement lien pursuant to 11 U.S.C. §361(2) on and in all assets of the Debtor that are acquired or generated after the Petition Date,

but solely to the same extent and priority, and of the same kind and nature, as the Cash Collateral securing the pre-petition obligations to the Creditors under the Loan Documents. The replacement liens granted hereunder to the Creditors shall not create a lien on or against any claims or causes of action arising under Sections 542 through 550 of the Bankruptcy Code (the "Avoidance Actions") or on or against the proceeds of the Avoidance Actions. Further, any replacement liens granted hereinto the Creditors shall be at all times subject and junior to all fees required to be paid to the Clerk of the Bankruptcy Court and to the Office of the United States Trustee under section 1930(a) of title 28 of the United States Code (the "Carve Out").

5. Any and all replacement liens granted to the Creditors under this Order shall be deemed valid, binding, enforceable and perfected upon entry of this Order. The Creditors shall not be required to file any UCC-1 financing statement or any similar document or take any other action (including possession of any of the collateral) in order to validate the perfection of the their liens. If the Creditors shall, in their discretion, choose to file any such UCC-1 financing statements or other document, or take any other action to validate the perfection of any part of its replacement liens, the Debtor is directed to execute any documents or instruments as the Creditors shall reasonably request, and all such documents and instruments shall be deemed to have been filed or recorded at the time and on the date of entry of this Order. If this Chapter 11 case is dismissed or converted, then neither the entry of this Order nor the dismissal or conversion of this Chapter 11 case shall affect the rights of the Creditors and all of the respective rights and remedies thereunder of the Creditors shall remain in full force and effect as if this Chapter 11 case had not been dismissed or converted.

6. The stay imposed by section 362(a) of the Bankruptcy Code is hereby modified, to the extent applicable, to allow for the filing and recording of a certified copy of this Order or any

such financing statements, notices of lien or similar instruments, and all such documents shall be deemed to have been filed or recorded at the time of and on the date of the Petition Date.

7. Unless otherwise provided herein, the terms and conditions of this Order relating to the replacement liens and related priorities granted to the Creditors herein shall be binding upon the Debtor, their creditors, and other parties in interest and all successors in interest thereof including, without limitation, any trustee that is or may be appointed in this case or any trustee in a case under any other chapter of the Bankruptcy Code into which this case may be converted. This binding effect is an integral part of the agreement included in this Order.

8. The terms of this Order shall apply to any current or subsequently appointed trustee, whether under Chapter 11 or any Chapter to which this case may be converted in the future.

9. If an order dismissing the Chapter 11 case is at any time entered, such order shall provide (in accordance with §§ 105 and 349 of the Bankruptcy Code) that (i) the above-referenced replacement liens granted to and conferred upon the Creditors shall continue in full force and effect and shall maintain their priorities as provided in this Order until all obligations owed to the Creditors shall have been paid and satisfied in full (and that such liens shall, notwithstanding such dismissal, remain binding on all interested parties) and (ii) this Court shall retain jurisdiction, notwithstanding such dismissal, for the purpose of enforcing the post-petition liens referred to herein.

10. The entry of this Order shall be deemed retroactive to the date on which the Motion was filed.

11. Nothing contained in this Order shall alter the Creditors' rights to pursue the protections afforded under §§ 361 and 363 of the Bankruptcy Code. Similarly, nothing in this Order shall alter any defenses or rights of the Debtor with respect to those sections.

12. The Creditors may at any time file a motion with this Court seeking any such additional protection as it may reasonably require with respect to continued use of Cash Collateral by the Debtor or otherwise, including, without limitation, modification or termination of this Order authorizing the Debtor's continued use of Cash Collateral. Nothing herein shall prevent the Debtor or other parties in interest from opposing such a motion. Nothing contained herein shall be deemed to constitute an admission by the Creditors that its interest in the Cash Collateral is adequately protected within the meaning of 11 U.S.C. § 361 now or at some future time. The Creditors shall retain all rights available pursuant to the Bankruptcy Code or any other applicable law, including its right to seek adequate protection. The Debtor shall retain any and all rights to seek the use of Cash Collateral over the objection of the Creditors.

13. Except as otherwise specifically provided herein and under the Bankruptcy Code, the Creditors do not waive any of their rights under the applicable Loan Documents with the Debtor, or under the Bankruptcy Code.

14. This Order shall not operate to modify, alter, impair, affect, abrogate, amend, restrict or nullify any rights of the Creditors with respect to any person or entity other than the Debtor, nor to release, alter, impair, affect or abrogate any debts, claims, demand, actions and causes of action in law and equity, whether known or unknown, that the Creditors may have as to any person or entity other than the Debtor.

15. Notwithstanding Bankruptcy Rules 4001(a)(3), 6004(h), 6006(d), 7062 or 9024 or any other Bankruptcy Rule, this Interim Order shall be immediately effective and enforceable upon its entry and there shall be no stay of execution of effectiveness of this Interim Order as provided in such Rules.

16. The Court shall conduct a final hearing on the Motion on **June 17, 2021 at 2:00**

**P.M.** (Eastern Time) ("Final Hearing"). **Telephone Appearance Requirement**. Effective March 16, 2020, and continuing until further notice, Judges in all Divisions will conduct all preliminary and non-evidentiary hearings by telephone. For Judges Colton and Williamson, parties should arrange telephonic appearance through Court Solutions (www.court-solutions.com). For Judges Delano, Funk, Jackson, Jennemann, McEwen, and Vaughan, parties should arrange a telephonic appearance through CourtCall (866-582-6878).

17. This Court has and will retain jurisdiction to enforce this Interim Order according to its terms.

\* \* \*

*Eric D. Jacobs, Esq. is directed to serve a copy of this order on interested parties who do not receive service by CM/ECF and file a proof of service within 3 days of entry of the order.*

# EXHIBIT A

**Work Cat Florida LLC - Reorganization Budget**
**One Month Budget - 5/18/2021 - 6/19/2021**

| | | |
|---|---:|---|
| **Beg Cash** | 4,560 | |
| | | |
| **Collections** | | **Description** |
| Transplace | 282,526 | Customer Collection |
| RCS | 154,448 | Customer Collection |
| Landstar | 468,585 | Customer Collection |
| Claim payment* | | *Currently pursuing |
| **Total Available** | 910,119 | |
| | | |
| **OutFlows:** | | |
| Bank Fees | 600 | Bank Service Charge |
| Fuel | 150,000 | Fuel & Lube |
| Trailer Bridge | 191,800 | Barge Charter |
| LIM | 308,000 | Tug Charter |
| Payroll | 31,053 | Bi-Weely Payroll |
| DIX, port charges, etc. | 32,000 | Port expenses - Brownsville |
| PLRS | 49,836 | Stevedoring - Tampa |
| Signet | 60,000 | Tug Assists - Brownsville |
| Seabulk | 15,000 | Tug Assists - Tampa |
| Bankrupcy Fees | 5,000 | Bankruptcy Trustee and Attorney fees |
| **Total Outflow** | 843,289 | |
| | | |
| **End Cash Bal** | 66,830 | |